OPINION
The appellants, Rachel and Gerald (Jay) Sorg, appeals from two decisions of the Hancock County Court of Common Pleas granting permanent custody of their twin sons to the Hancock County Job and Family Services: Children's Protective Services Unit ("CPSU").
The relevant facts and procedural history are as follows. Jonathan and Isaiah Sorg, twin boys, were born to Rachel and Gerald Sorg on June 15, 2000. CPSU became involved with the family after medical personnel diagnosed the children with "failure to thrive." On October 25, 2000 CPSU filed a complaint alleging that the twin brothers were neglected and dependant children, based on the medical diagnosis. The twins were removed from their parents' custody pursuant to an ex-parte order issued by the Hancock County Court of Common Pleas, Juvenile Division.
A dispositional hearing was held on December 21, 2000, at which time the court granted temporary custody of the boys to CPSU. On that same day, a case plan with the goal of reunification was filed in this matter. The goals of the plan were as follows:
 1. Mr. and Mrs. Sorg will provide a safe and stable home environment.
 2. Mr. and Mrs. Sorg will learn new and appropriate ways to parent their children.
 3. Mr. and Mrs. Sorg need to continue counseling to address issues with anger management.
 4. Mr. and Mrs. Sorg will establish a stable income to meet the children's basic needs.
Although the case plan was in place for nearly one year, the Sorgs failed to complete any of the four goals.
CPSU filed a motion for permanent custody of the boys on July 27, 2001. A hearing on the matter was conducted on November 7, 2001. In a judgment entry filed on December 5, 2001, the court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to CPSU. The court also found by clear and convincing evidence that the boys could not be placed with their parents within a reasonable time. From that judgment, Mr. and Mrs. Sorg now bring this timely appeal, asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court abused its discretion and erred in granting permanent custody to the Hancock County Department of Job and Family Services because the agency failed to develop and implement a case plan reasonably calculated to achieve the goal of reunification of the minor children with either parent.
For their first assignment of error, the appellants claim that the trial court erred in granting permanent custody to CPSU because the Agency failed to develop a case plan that was reasonably calculated to achieve reunification with the twins, in light of the appellants' mental disabilities.
We note at the outset that parents have a fundamental right to the custody, care, and nurturing of their children.[1] This fundamental liberty interest does not evaporate simply because the parents have temporarily lost custody of the child to the state.[2] In fact, a parent's interest in the custody of his or her child is paramount to all others except for that of the child.[3]
R.C. 2151.419 imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home.[4] The agency bears the burden of showing that it made such reasonable efforts.[5] "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated."[6] To that end, case plans establish individualized concerns and goals, along with the steps that the parents and agency can take to achieve reunification.[7] Accordingly, agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan.[8]
There was testimony at the hearing that CPSU made adjustments to the usual protocol based on the appellants' learning disabilities. The Sorgs' caseworker, Ms. Jamie Smeltz, testified that the case plan was written in simple, straightforward language and that she reviewed it with them between 15 and 20 times. Both Mr. and Mrs. Sorg expressed understanding of the case plan when asked. The caseworker also admitted that she was not specifically qualified to work with people who had disabilities. However, she indicated that as part of her training she learned how to make a case plan easily understandable to a low-functioning individual. Although the Sorgs both indicated to her that they had difficulty learning, Ms. Smeltz admitted that she was not made aware of the extent of the appellants' disabilities. Nevertheless, she testified that she simplified the case plan in order to make it easier for them to comprehend.
The parenting specialist who was assigned to the appellants' case, Ms. Rebecca Schumaker, also testified that she made certain adjustments to her normal routine to accommodate the Sorgs. Specifically, she stated that instead of providing written parenting instructions to the appellants, she engaged in role-modeling, whereby she would act out appropriate parenting behavior for them. According to Ms. Schumaker, the appellants failed to make progress in most areas despite her repetition of the role-modeling.
Dr. Carol Patrick, who conducted a partial psychological evaluation of both the appellants, opined that they should not have had a problem understanding the case plan. At the custody hearing, Dr. Patrick testified:
 "Q * * * if Rachel could meet with someone who was giving her parent education and this person was a mental retardation specialist * * * that would help Rachel's parenting skills; would it not?
 "A Yes. Somebody who understands their academic and mental functioning levels and was able to explain things to them."
However, when asked whether she thought "it was necessary for someone who has special training in dealing with low functioning individuals like Rachel and Jay to be involved in the case plan or to be involved on a daily basis in order for them to understand," she replied "no, I don't." She also stated that she had not found the Sorgs to be more than "a little bit" lower in their functioning than the average parents involved with children's services.
When reviewing a lower court's grant of permanent custody to children services agencies, an appellate court shall not reverse a judgment that is supported by some competent, credible evidence.[9] In the instant case, the court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to CPSU and that the boys could not be placed with their parents within a reasonable time. In support of the latter finding, the court found that:
 "following the placement of the children outside their home and withstanding reasonable cause [sic] planning and diligent efforts by the Agency to assist the parents to remedy the problems that initially caused the children to be placed in foster care, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed in foster care * * *. In determining these factors, the court has considered the failure of the parents to utilize the medical, psychiatric, psychological and other social and rehabilitative services and material resources that were made available to the [sic] them for the purposes of changing their conduct to allow them to assume and maintain parental duties. The Court further finds a total lack of follow-through by the parents with the case plan even with the 15-20 attempts by the Agency to discuss and assist the parents with the case plan. The mother has missed numerous appointments with Dr. Patrick and Century Health that were set up to assist her with her parenting skills. Also, as of the date of this hearing, the mother has no place to live. "
The record reflects ample competent, credible evidence to support all of the court's findings, including that CPSU made reasonable, diligent efforts with regards to the case plan. Consequently, the appellants' first assignment of error is not well-taken and is hereby denied.
 ASSIGNMENT OF ERROR NO. II The lower court abused its discretion and erred in granting permanent custody to the Hancock County Department of Job and Family Services because the agency failed to reasonably accommodate Rachel and Jay Sorg's access to services as required by the Americans With Disabilities Act.
The appellants contend that the trial court erred in granting permanent custody of their twin sons to CPSU because the agency failed to make reasonable accommodations for them as required by the Americans With Disabilities Act (ADA).
The appellants failed to raise the issue of whether they are entitled accommodations under the ADA before the lower court. "Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed."[10] Furthermore, by failing to raise this issue at trial, the appellants failed to create a record establishing that they are "disabled" within the meaning of the ADA.[11]
Accordingly, the appellants' second assignment of error is not well-taken and is hereby denied.
Having found no error prejudicial to the appellants, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
BRYANT and WALTERS, JJ., concur.
[1] In re Shaeffer Children (1993), 85 Ohio App.3d 683, 689, citingSantosky v. Kramer (1982), 455 U.S. 745, 753.
[2] Santosky, 455 U.S. at 753.
[3] In re Perales (1977), 52 Ohio St.2d 89, 97.
[4] In re Brown (1994), 98 Ohio App.3d 337, 344.
[5] R.C. 2151.419(A)(1).
[6] In the Matter of Evans (Oct. 30, 2001), Allen App. No. 1-01-75.
[7] Id.
[8] Id.
[9] In re Thomas (March 9, 2000), Cuyahoga App. Nos. 75330, 75331, and 75332.
[10] State ex rel. Quarto Mining Co. v. Foreman (1997), 79 Ohio St.3d 78,81, quoting Goldberg v. Industrial Comm. (1936), 131 Ohio St. 399,404.
[11] In re Shawn W. (Sept. 30, 1996), Lucas App. No. L-95-267.